We'll circle back and take up our last case of the day, Corbett v. Hochul and Adams. All right, counsel, you've reserved three minutes for rebuttal. We'll hear from you when you're ready. Good morning, Your Honors. I'm Jonathan Corbett, appellant and attorney representing myself here. May it please the Court, at bottom of the point the Supreme Court made last year in the New York State Pistol and Rifle Association case was that the ordinary law-abiding citizen has the right to a gun license. Before last year, there was no training requirement for anyone who applied for a gun license in New York State. So if you lived upstate or you lived here and you happened to have the right connections to get a license, you trained for zero hours. Today, the state, while we're here, is that the state says that 18 hours of training is required to protect the public interest before licensure and at renewal every three years. This is done in the context of several other things that make it clear that the point here is not public safety. It's disenfranchisement. In addition to this 18-hour requirement, which is the longest in the country, they have outlawed guns from subway, buses, trains, all public parks, pretty much any public building at all. Is there a number of hours that would be constitutionally permissible for a training requirement? I think so, Your Honor. So a number of hours needs to be proportional to whatever the state's need is and whatever the need to train people, whatever needs to be conveyed during that time. Every other state has found that they're able to convey the information that they need to convey in less than 18 hours. Most states have somewhere in the range of four hours. It's confusing to me what possibly could go on during these 18 hours. I don't know how you'd train someone for it. Well, there's two hours of live fire training, so that's pretty clear. But the other 16 hours, what are you going to talk about for 16 hours during a gun license training? There's use of force when you're allowed to use force when you're not. Maybe garden variety safety measures, how you need to store your handgun. These are things that don't take 16 hours. If there was something that could be conveyed within this 16 or 18 total hours that would protect the public, my position would probably change. But I just don't think that it's there. So it's not just training per se that's impermissible. It's the amount, the 18 full hours of training that's impermissible in your view? Absolutely. There's no argument being made here that training in its entirety, no matter how long, is unconstitutional. The state has some interest in making sure that the people who take up these arms know what the rules are. That's fine. There's no question that the state can do that, at least not from me. But the idea here that we're going to require 18 hours of training in addition to all of these other requirements that just got added. So I just mentioned that the law now prohibits the guns from being taken pretty much anywhere that you'd have to go during your day if you're a New York City resident. You can't go on the subway with it. It required applicants to disclose all of their online activities so that essentially you now have a choice between your First Amendment rights and your Second Amendment rights. It required you to basically disclose to your friends or colleagues that you're applying for a license because now there's a four-person reference requirement. And all of this repeats every three years. It costs over $1,000 to complete all of these requirements every time. It takes dozens of hours during the workday, multiple in-person appearances. And from all of this, this context that I give you, we're not challenging those other requirements right here. But the context makes it clear that what we're trying to do here is disenfranchise citizens. And again, bringing us back to the Supreme Court last year where the whole idea was that the ordinary law-abiding citizen should be able to carry. That's not what the government did here. So in the wake of that decision, Applee Kathleen Hochul, the governor, got together with lawmakers to do as close to what got overridden as possible. So the decision of the Supreme Court basically stated that New York can't pick and choose who gets a gun license based on who has a good reason or not. And that allowed New York State to limit the number of applicants severely. The rule in New York City was that one needed to show a need for a handgun greater than that of the ordinary citizen. So literally, the ordinary citizen could not get a license here in New York. The Supreme Court overturned that. And now what we have is a bill that makes it essentially as inconvenient as possible to get a license. And for a working-class New Yorker, probably impossible. To take off all of this time from work, which in addition to the 18-hour training course, there's multiple in-person appearances. There's interviews. Obviously, the reference requirements. All these things take, in my estimation, somewhere probably close to 40 hours to get the license. And again, this is every three years. Your Honors, New Yorkers wishing to exercise their Second Amendment rights are exhausted by what New York has done throughout the years to make it so that only special people can get a license. I'm one of those people that's exhausted by this. I first applied for a license to carry a handgun in New York City in 2016. Despite having no criminal record or any disqualifying background, despite being a member of the bar of this court, despite having been to New York County Supreme Court, the First Department, the State Court of Appeals, twice the Southern District of New York, and now twice here in the Second Circuit, spending thousands of dollars in fees, I still have no license. So I asked the court, if a civil rights attorney can't get a license to exercise his civil rights, what hope does that ordinary law-abiding citizen have? New Yorkers have been disenfranchised, and the training requirement is one, just one, but not an insubstantial part of that disenfranchisement. The core of the government's argument was that an 18th century militia requirement is analogous to this. We all know that that's not true. A militia requirement has nothing to do with modern gun licensing. Appellees simply give the court a reason to uphold, an excuse to uphold the law. Did you, I know you didn't undertake the 18 hours of training, but do you have some training?  That would qualify? Well, not that would, well, only 18 hours qualifies, right? 18 hours, but do you have any training within that five-year look-back period? No. And do you intend to get any of the training? I don't know if there's any option to get some training versus all of it. Okay. And have you, you've applied for the license and articulated that you are untrained and don't intend to do the training. Is that correct? Correct. Okay. Thank you. Thank you, counsel. You've reserved three minutes. We'll hear from you shortly. Thank you, Your Honor. This is Philip Levitz with the State Appellees. This court should affirm the district court's denial of preliminary injunction for at least three reasons. First, Mr. Corbett lacked standing, as I think Your Honor was getting at, particularly against the state defendants, who are not responsible for deciding his license application. Second, New York's training requirement for a license to carry a firearm in public is consistent with the Second Amendment, and actually Mr. Corbett just acknowledged that a training requirement is consistent with the Second Amendment and doesn't provide any way to distinguish New York's from any other. Third, the public interest and balance of the equities weighs strongly against enjoining the operation of duly enacted public safety legislation that has already been operative for more than a year. So I'd like to start with the Second Amendment merits because the district court denied a preliminary injunction on that basis. Corbett has not shown a likelihood of success on the merits because he has not met his initial burden to demonstrate that the Second Amendment establishes a right to carry firearms in public without any training. To the contrary, the Supreme Court made clear in Heller that the Second Amendment right always assumed a responsibility to learn to handle and use arms, that's a direct quote, safely and efficiently with proper, again a direct quote, proper discipline and training. Moreover, the Supreme Court has repeatedly made clear that the Second Amendment establishes the right only of law-abiding to responsible citizens to carry firearms. Again, I think Mr. Corbett effectively acknowledged that at the beginning of his comments today. And New York's firearm training requirement, like similar training requirements in the vast majority of states, by the way, merely helps ensure that those licensed to carry firearms are in fact law-abiding and responsible. The Supreme Court confirmed in Bruin that such training requirements, designed to ensure only that those bearing arms in the jurisdiction are in fact law-abiding, responsible citizens, are constitutional. The Bruin Court did not conduct a historical analysis before confirming this, presumably because such a training requirement is outside the scope of the Second Amendment's protection. When it prevents from bearing arms, only those who refuse training and thus have not shown themselves to be law-abiding and responsible. For the same reason, this Court did not conduct any historical analysis to uphold New York's training requirement here. But in any event, there's a rich history of analogous training requirements from the founding era from across the country. For instance, in 1780, New York law required able-bodied men to participate in military training and to the use of arms. There were similar requirements all over the country. And by the way, those requirements were more verbose than the requirements that New York has recently put in place today. Mr. Corbett complains about New York's current requirement being onerous, but in the founding era, you were required to do training four times a year in New York. More than that in other states, up to as many as six times a year. And just to be clear, Mr. Corbett is factually incorrect in suggesting, insofar as he was suggesting that training is required to be repeatedly done on every renewal of your license. That's simply not true. The statute requires you to do the training once when you first receive your license. Or if you – because of the timing of the CCIA's passage, you haven't previously done the training on your first renewal after the CCIA, but the Concealed Carry Improvement Act goes into effect. You need to do the training once. You do not need to repeat it after that. So, again, the burden of the current New York requirement is far less, actually, than the analogous founding training requirements. Why was it appropriate for the district judge to assume or say there is likely standing in this circumstance here as opposed to doing a standing analysis? Your Honor, probably it would have been better to start with standing because that is a jurisdictional initial question. And I'm glad you bring that up because that's an independent reason that Corbett is not entitled to a preliminary injunction. He doesn't have standing for this claim for two independent reasons against the state defendants. So, first, the state defendants aren't the right defendants in the first place. And that's because the state defendants don't decide licensing applications. It's the city, in Mr. Corbett's case, who decides the licensing application. So the state defendants simply aren't the right defendants here. They can't do anything to provide Mr. Corbett with the relief that he's looking for. And then secondly, Corbett also lacks a concrete injury needed for standing against any defendant, us or the city, because his license application has not been denied. Under this court's settled precedent, Mr. Corbett must wait until his application is actually adjudicated before he suffers a cognizable injury. We can look to the libertarian part of the case, the DiCastro case, the libertarian part of the case relies on. Corbett cannot claim that his license application is futile simply because he objects to the training requirement. At this stage, it's unclear whether or if so why his application will be denied. And at a minimum, he could be denied a license for a reason unrelated to failure to complete the training. So he simply has no injury at this point to be challenging. Finally, let me just touch on the remaining preliminary injunction factors, because, again, they provide another reason that preliminary injunction is not appropriate here. He's not satisfied his additional burden to prove any of those remaining factors support a preliminary injunction. Any injury to Corbett from being required to complete training he does not wish to complete is outweighed by the serious risk of harm to the public at large if New Yorkers are permitted to carry firearms with no training against the wisdom of the legislature. And a preliminary injunction would be particularly inappropriate here because it would reverse the ordinary purpose of a preliminary injunction by upending rather than maintaining the status quo. Specifically, a preliminary injunction here would enjoin operation of a training requirement that's already been effective for more than a year. I believe my time is up. So we just ask that the court to confirm. Thank you. Thank you, counsel. And we'll hear from counsel for the city. Still morning. Good morning. Good morning, Your Honors. Alina Junker on behalf of the city. I wanted to emphasize today that we're here on a denial of a preliminary injunction. And Mr. Corbett is sort of bound to the record that he created below. And in that record that he created below, he admits in his reply brief that there is a gap, that he doesn't even fully cover the full five-year look back in his representation, that he doesn't have sufficient training. He fundamentally lacks standing because under libertarian party, it's his burden to make a substantial showing that his application would be futile or to follow through with the process. And for other reasons as well, his application can be denied because his application is still pending and there are other materials missing other than training. So this court need not even get into the Bruin analysis and history. But if you were to, it's very clear just reading Bruin that this training requirement is permissible. There's a footnote in Bruin that says, So the whole purpose of this training requirement is, before you even get to whether or not you're in the Second Amendment, is to just ensure that it's people within the scope of the right that are exercising it. And Mr. Corbett concedes that because he says, I can see that some training is permissible. So what he's really arguing is, I'm OK with one day of training, but a weekend is impermissible. And you have to find a historical twin to show the delta between one day of training and two days of training. That's not the analysis that Bruin conceives of. In fact, all these references to, oh, the state might have an interest in some training, but the state doesn't have an interest in other training, the Supreme Court rejected in Bruin. And what Bruin says is, in fact, all this interest-balancing stuff that we used to do is apparently incorrect. And instead, the way that we analyze the Second Amendment is to try to discern what the original public understanding of the Second Amendment was at the founding or at Reconstruction. And is it consistent? Is this burden consistent with that original understanding? And it is. The court need not even rederive it because Bruin basically says so in that footnote. But even if the court were to, there's ample historical evidence that burdens akin to this were regular at the founding. And so there's no need to even do this for so many reasons. But if you ever were to get there, the training requirement of 18 hours is fully consistent with what Bruin says government can do. Does the statute allow for any discretion, for example, if Mr. Corbett said, well, I don't have 18 hours in the last five years. But I used to be a gun instructor, and I taught gun safety classes 40 hours a week for 10 years until six years ago. Is there some discretionary vehicle where there's a pathway for a person, an applicant to say, look, I see that you have this 18 hours within X period requirement. Let me show you why my substitute experience is sufficient. So, no, there isn't. And I'll say, you know, there are 40 or some states that have training requirements. Most are in some ways or another stricter than ours because they require retraining and renewal. So the fact that someone, it's a calculation that's been made across the country. You know, the fact that someone might be able to point to something somewhere in the past is insufficient. But what this does is already have quite a lot of flexibility because you have an 18-hour course. You can look them up. They exist now. So there are 18-hour courses available. It's like a weekend course. It's a two-day course. It doesn't have to be consecutive. There's not. And putting aside the course, there is a way to cobble together because there's discretion in that five-year look back to excuse some of that. So you say, you know, Mr. Corbett represents in his papers that he is better trained than an NYPD officer. If that's the case, he can almost certainly supply evidence that he has had live fire instruction over the last five years. If he hasn't, he may not be sufficiently trained. But if training, if a test of competence is permissible, there's no need for some historical analysis of whether the exact contours and nuances of the training is exactly what either history would have permitted, which is, I guess, the way the Second Amendment looks to these things. The question is whether it's, I mean, I think that really what Bruin tells you at the end of that same footnote is the only way that you can challenge a shell issue regime like what we have here now is to say that it's being used in a manner that puts the ability to carry a firearm beyond the life of law-abiding responsible individuals. So through fees that are too high or through delays that are so inordinate that as a result, people can't exercise their rights. This training is fairly minimal and also can be satisfied and reduced further by training within the five-year look-back. That's not the kind of excessive claim that Bruin conceives of as the only sort of route to challenge a regulation like this that is just about ensuring that law-abiding responsible individuals carry. And I see my time is up. So unless the court has other questions, I'll just say he just has not met his burden on the PI below. There's no error here. So the court ought to defer. Thank you. And Mr. Corbett, you've reserved three minutes. And actually, I'm sure you have a bunch of things to address, but I'll ask you to pick up on that question I asked about sort of from your perspective, what if there were a fuller measure of discretion? What if people could, in their application, say, yeah, I didn't tick these boxes, but let me show you why I am the kind of law-abiding responsible person? Would that be sufficient? I think that would certainly weaken my argument if the state had that kind of discretion. But they don't. I mean, the government here spent a lot of time arguing for standing issues, saying that, you know, I haven't been denied yet, and therefore it's not futile. The government must deny my application based on the current law. There is no question that it must deny it. So the application is futile. They also raised the point, well, maybe they might deny my application for something else, but that's also not relevant. The court has the power to remove one roadblock, even if there might be other roadblocks, other things that I might need to do in the meantime. The state defendants also claimed that there's no standing as to them. That may or may not be true. We allege that there are some connections to the state defendants. But clearly, the right defendant is here. There's at least one defendant here, and therefore the preliminary injunction can issue. I'll just close with an observation that the government just described the most onerous training requirement in the country as fairly minimal. That is just simply not the case. I invite the court to look around and to see what every other state does. It is not this. Thank you, Your Honors. And how do you address the Bruin argument that training is permissible? I know you're conceding that some level of training is permissible, but how would you distinguish between 12 hours, 18 hours? How would you even do an analysis as to when you tip over into an unconstitutional area in terms of training? I think figuring out that bright line might be difficult. It might require some kind of analysis of what the need is that the government has versus what the burden is on the people. If the state could prove that 18 hours of training is really what's necessary, then maybe they would be able to win the day. But the fact that, first of all, there was no training at all in this state required two years ago, and every other state does it in less, really puts that argument—it doesn't bode well for the argument. Bruin was also very clear that licensing requirements can be excessive. The fees can be excessive. And here we have—if there is a training regimen in this country that is excessive, this is the one. Thank you.